**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
BH99 REALTY, LLC,

                              Plaintiff,                  **REPORT AND**
                                                                           **RECOMMENDATION**
          - against -

                                                                          10-CV-0693 (FB) (JO)
QIAN WEN LI, et al.,

                                Defendants.
----------------------------------------------------------X

**JAMES ORENSTEIN, Magistrate Judge:**

        Plaintiff Greystone Bank ("Greystone"), the predecessor of current plaintiff BH99 Realty, LLC ("BH99"), commenced this action on February 17, 2010, against defendants Qian Wen Li ("Li"), Jie Juan Yang ("Yang"), 99 Wilson, Inc. ("99 Wilson"), and others, seeking to foreclose its mortgage on property located at 99 Wilson Avenue, Brooklyn, New York (the "Property"), as well as other related relief. Docket Entry ("DE") 1 (Complaint). Li, Yang, and 99 Wilson all failed to respond to the Complaint and on July 8, 2010, Greystone moved for a default judgment. DE 19; *see also* DE 26 (revised motion by substitute plaintiff BH99). By order dated August 20, 2010, the Honorable Frederic Block, United States District Judge referred the matter to me. I now make this report, and, for the reasons set forth below, respectfully recommend that the court award judgment in favor of the plaintiff on its first and fifth causes of action, dismiss the remaining three claims, order the foreclosure and sale of the Property, and enter judgment against defendant Li alone in the amount of $696,878.95 (including unpaid principal of $575,155.64; $109,860.64 in unpaid interest on the principal; $3,449.15 in amounts advanced by Greystone for property taxes and insurance premiums; $786.92 in late fees; $500.00 for a broker price opinion report; $5,439.50 in attorneys' fees; and $1,687.10 in litigation costs).

I.   Background

   A.   Facts

The following recitation of facts is drawn from the Complaint's uncontested allegations, the supporting exhibits attached thereto, and the uncontroverted documents filed in support of the instant motion. On January 23, 2008, Li executed and delivered to Greystone a Mortgage Note. Complaint ¶ 12 & Ex. 1 (copy of the Promissory "Note"). To secure the payment of the principal sum, Li and Yang (collectively the "Mortgagors") executed and delivered to Greystone, as mortgagee, a first mortgage lien on the Property in the principal amount of $584,000.00. *Id.* ¶ 13 & Ex. 2 (copy of the "Mortgage"). The Mortgage was duly recorded with the City of New York on February 13, 2008. *Id.*

Pursuant to the Note, Li agreed to pay to Greystone the sum of $584,000, with interest, in monthly installments of $3,934.53 to begin on March 1, 2008. *Id.* ¶ 18; Note § 3(c). The Note provides for a yearly interest rate of 7.125 percent until February 1, 2011, and a variable rate thereafter. Complaint ¶ 19; Note § 3(b). The Note further provides that after an "Event of Default," a default interest rate shall apply. Complaint ¶¶ 20-21; Note § 3(a). A failure to pay any amount due and any transfer of the Property are included as events of default. Complaint ¶¶ 22-24; Mortgage §§ 21, 22(a) and (e). Li is personally liable for all amounts due. Complaint ¶¶ 51-52; *see* Note § 9.

On or about March 9, 2009, the Mortgagors transferred the Property to 99 Wilson, in violation of the Mortgage's terms and conditions. Complaint ¶¶ 5, 29; *see* Mortgage §§ 21, 22(e). Further, since making a payment on August 1, 2009, Li has failed to make any payments on the Note, also in violation of its terms and conditions. DE 31 (Supplemental Declaration of [BH 99's

counsel] Rachel Kramer ("Kramer")) (Kramer Supp. Dec.) ¶ 3; Mortgage § 22(a).[1] For these reasons, Greystone declared Li in default. On January 12, 2010, Greystone informed the Mortgagors that it was accelerating the loan, meaning that the entire unpaid principal balance, accrued interest, and other amounts payable became immediately due and payable. Complaint ¶ 30.

B.  Proceedings

Greystone commenced the instant action on February 17, 2008. In its Complaint, Greystone asserted five distinct causes of action. In the First Cause of Action, it sought foreclosure and sale of the Property, damages, and related relief. Complaint ¶¶ 11-35 & pp. 11-13 (prayer for relief ¶¶ A-G). In the Second Cause of Action, it sought foreclosure of the personal property of the Mortgagors and 99 Wilson. *Id.* ¶¶ 36-38 & p. 13 (prayer for relief ¶ H). In the Third Cause of Action it sought rental proceeds on the Property from the Mortgagors and 99 Wilson. *Id.* ¶¶ 39-42 & p. 13 (prayer for relief ¶ I). In the Fourth Cause of Action it sought possession of the property. *Id.* ¶¶ 45-49 & p. 13 (prayer for relief ¶¶ J-K). In the Fifth Cause of Action it invoked section 9 of the Note and sought judgment against Li personally. *Id.* ¶¶ 50-53 & p. 13 (prayer for relief ¶ L). Greystone also sought an award of attorneys' fees, costs, and disbursements on all causes of action. *Id.* at 14 (prayer for relief ¶ M).[2]

---

[1] The Complaint alleges that Li's most recent timely payment was made in April 2009. Complaint ¶ 28. That allegation appears to have been a drafting error; the correct date for the last payment is actually August 1, 2009. Kramer Supp. Dec. ¶ 3; DE 31-1 (Supplemental Declaration of [Greystone Special Asset Officer] Alix Pierre) ("Pierre Supp. Dec.") ¶ 2 & Ex. A).

[2] The Complaint also named three agencies as defendants, in addition to the Mortgagors and 99 Wilson, because of liens those agencies might be in a position to assert against the Property. The claims against those agencies have since been resolved. *See* DE 21; DE 33. I therefore exclude those agencies from all references to the "defendants" in this report.

Greystone promptly served process on Li and 99 Wilson. DE3; DE 4. It was unable to effect personal service on Yang, *see* DE 17, but counsel for Yang and the other defendants nevertheless filed both an Answer and a notice of appearance on behalf of all three of them. DE 9; DE 10. Although the Answer asserted an affirmative defense of lack of jurisdiction that noted the failure to effect service on Yang, *see* DE 9 at 3, the defendants later withdrew that Answer, thereby apparently waiving any objections to jurisdiction. *See* DE 11. On October 13, 2010, at Greystone's request, DE 18, the Clerk entered the default of each defendant. DE 28.

On July 8, 2010, Greystone filed the instant motion for default judgment. DE 19. By order dated July 20, 2010, Judge Block referred the motion to me. On the same date, I directed Greystone to submit any additional materials in support of its requests for relief no later than August 10, 2010. On the last day for making such a submission, Greystone informed the court that it had sold the Note and Mortgage to BH99, and requested an extension of time to submit additional papers. DE 24. I granted the request in an order of the same date. On August 19, 2010, Greystone filed a motion to substitute BH99 as plaintiff in its place of Greystone, DE 25, and also filed a revised motion for default judgment naming BH99 as the plaintiff. DE 26. In an order of the same date, Judge Block referred both of those motions to me. I granted the substitution motion the next day. DE 27.

On December 3, 2010, I held a hearing at which BH99's counsel presented argument but declined to call any witnesses. DE 30; *see* DE 32 (transcript of proceedings dated December 3, 2010) ("Tr."). At the hearing, I offered BH99 the opportunity to make additional submissions to answer my questions concerning the sufficiency of its motion. *See* DE 30. BH99 filed its supplementary papers on December 17, 2010. DE 31.

4

BH99 now seeks a judgment only as to the first and fifth causes of action. At the evidentiary hearing, BH99 confirmed that it has abandoned the remaining causes of action. Tr. at 4. It has also explicitly abandoned its earlier request for a prepayment premium. Kramer Supp. Dec. ¶ 10. The relief it now seeks includes foreclosure and sale of the Property as well as a total monetary award against Li alone in the amount of $686,430.87. DE 34-1 ("Proposed Judgment"); DE 31-2 (Revised "Statement of Damages"). Specifically, it requests $575,155.64 in unpaid principal under the loan; $90,077.68 in interest on that amount plus additional interest through the date of judgment; $3,449.15 for amounts it advanced to pay property taxes and insurance premiums; $786.92 in late fees; $500.00 for a Broker Price Opinion Report; $14,775.60 in attorneys' fees; and $1,687.10 in litigation costs. *See* Statement of Damages.[3]

II.   Discussion

   A.   Default

When a defendant defaults, the court must accept as true all well-pleaded allegations in the complaint, except those pertaining to the amount of damages. Fed. R. Civ. P. 8(b)(6); *see Finkel v. Romanowicz*, 577 F.3d 79, 83 n.6 (2d Cir. 2009) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L.*

---

[3] On January 17, 2011, the defendants' new counsel filed a notice of appearance. DE 35. On February 10, 2011, the defendants requested a pre-motion conference in anticipation of seeking to dismiss the action for lack of subject matter jurisdiction and lack of personal jurisdiction over Yang. DE 37. The court has scheduled a conference for March 18, 2011. DE 41. Given the anomalous nature of the request in light of the default and the pending motion, I convened a conference on February 16, 2011. As I noted in the minute entry for that conference, "Unless and until the defendants successfully move to vacate the default judgment, I will proceed to prepare my report and recommendation; likewise, in the absence of a successful motion for jurisdictional discovery, I assume that no party has any discovery obligations at this point." DE 40. In the month since that conference, the defendants have not moved to set aside the Clerk's entry of default and have sought no discovery relief. Thus, as the record currently stands, the defendants remain in default and there is no reason to doubt that this court has jurisdiction over the defendants. Moreover, although I do not purport to opine on the defendants' proposed motion, based on my independent review of the record, including the defendants' latest submissions, I have no reason to question the existence of the court's subject matter jurisdiction over this action.

*Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). The fact that a complaint stands unanswered does not, however, suffice to establish liability on its claims: a default does not establish conclusory allegations, nor does it excuse any defects in the plaintiff's pleading. With respect to liability, a defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action. *See, e.g.*, *id*. at 84; *Directv, Inc. v. Neznak*, 371 F. Supp. 2d 130, 132-33 (D. Conn. 2005) (denying default judgment on several claims based only on conclusory allegations which lacked a sufficient factual basis for a finding of liability); *see also Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 69 (2d Cir. 1971) (default-based liability is established by "well-pleaded allegations in a complaint"), *rev'd on other grounds*, 409 U.S. 363 (1973); *Greyhound Exhibitgroup*, 973 F.2d at 159 (complaint's assertion of proximate cause necessary for finding of liability must be "properly alleged"); *Levesque v. Kelly Commc'ns, Inc.*, 1993 WL 22113, at *5 (S.D.N.Y. Jan. 25, 1993) ("the Court must be satisfied initially that the allegations of the complaint are 'well-pleaded'") (citing *Trans World Airlines*, 449 F.2d at 63). Accordingly, before considering the issue of damages as to each cause of action, I first examine whether the Complaint's first and fifth causes of action successfully state claims for relief.

B. <u>First Cause Of Action: Foreclosure Of Real Property</u>

Under New York law, a plaintiff is entitled to foreclosure "as a matter of law through the production of the mortgage, the unpaid note, and evidence of default." *Village Bank v. Wild Oaks Holding*, 601 N.Y.S.2d 940, 941 (App Div. 1993); *see also 1st Bridge LLC v. 682 Jamaica Ave., LLC,* 2010 WL 4608326, at *3 (E.D.N.Y. July 13, 2010) (quoting *United States v. Fugle*, 2003 WL 251948, at *2 (W.D.N.Y. Jan. 25, 2003) (granting summary judgment in a mortgage foreclosure

action upon "proof of the existence of an obligation secured by a mortgage, and a default on that obligation.") (quoting *U.S. v. Freidus*, 769 F. Supp. 1266, 1277 (S.D.N.Y. 1991)).

BH99 has produced copies of the Mortgage and the Note, *see* Complaint Exs. A & B, and established the obligations of the Mortgagors thereunder. *Id.* ¶¶ 12-13. BH99 has also provided evidence of the Mortgagors' default both by failing to make payments and by transferring the Property to 99 Wilson. *Id.* ¶¶ 28-29; DE 26-3 (Declaration of Alix Pierre) ("Pierre Dec.") ¶¶ 13-14; *see also* DE 26-1 (Memorandum of Law) ("Memo.") at 2. I therefore conclude that BH99 has adequately alleged its claim for foreclosure. As a result, I further I conclude that it is entitled to the relief it seeks on its first cause of action; namely, foreclosure and sale of the Property, I therefore respectfully recommend that the court enter an order affording such relief in the form BH99 has submitted in its Proposed Order.

C.  Fifth Cause Of Action: Li's Personal Liability

BH99 also seeks a deficiency judgment against Li. Complaint ¶¶ 50-52; Memo. at 4. Under the terms of the Note, Li agreed to be personally liable for all amounts due under the Note. Note § 9. Those amounts include "interest, attorneys' fees, costs and all other amounts due under the Mortgage and Note." Complaint ¶ 52. I conclude that BH99 has adequately pleaded (and that Li's default therefore proves) that Li is liable for all amounts due under the Mortgage and Note and therefore respectfully recommend that the court find Li liable on the Complaint's fifth cause of action.

Upon a finding of liability, the court must conduct an inquiry sufficient to establish damages to a "reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (quoting *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d

105, 111 (2d Cir. 1997)). Detailed affidavits and other documentary evidence can suffice in lieu of an evidentiary hearing. *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991); *Credit Lyonnais*, 183 F.3d at 155. I conducted a damages inquest on December 3, 2010, and gave BH99 on opportunity to make additional submissions to the court. DE 30. I make the instant report and recommendation on the basis of the papers initially submitted in support of the motion, DE 26; the arguments made at the inquest on December 3, 2010, DE 32; and the supplemental papers submitted on December 17, 2010, DE 31.[4]

1. Unpaid Principal Balance

The original loan was in the amount of $584,000.00. Complaint ¶ 12; Pierre Dec. ¶ 4. BH99 seeks the current unpaid balance of the principal, which amounts to $575,155.64. Pierre Dec. ¶ 16; Pierre Supp. Dec. Ex. A. BH99 has adequately shown the payment history of the loan and I therefore respectfully recommend that the court award it the full unpaid balance of $575,155.64.

2. Interest

BH99 seeks default interest at an annual rate of 12.125 percent in the amount of $90,077.68 from September 1, 2009, through December 12, 2010, and additional interest through the date of judgment. The Note provides for a regular annual interest rate of 7.125 percent but after an event of default the lender is entitled to collect default interest at a rate "equal to the lesser of five [5] percentage points above the [regular annual interest rate] or the maximum rate which may be collected from Borrower under applicable law." Note §§ 3, 8. BH99 has adequately proven that an

---

[4] The defendants were given notice of the inquest, *see* DE 29, but did not seek to participate in it. Nor have they objected in any way to the proceedings at the inquest or sought to have any input on the resolution of the instant motion since renewing their appearance in the case. I therefore assume that, having had ample notice and an opportunity to be heard, they have waived any objection to the instant report and recommendations.

event of default occurred and therefore that it is entitled to default interest from September 1, 2009 through the date of judgment. Complaint ¶¶ 28-29; Kramer Supp. Dec. ¶¶ 3-4. It has also established that the default annual rate of 12.125 percent that it seeks is less than the maximum interest rate available under New York Law. DE 31-3 (Supplemental Memorandum of Law) ("Supp. Memo.") at 2-3. I therefore conclude that it is entitled to interest at the default annual rate of 12.125 percent. Applying that rate to the unpaid principal amount of $575,155.64 for the period of 575 days between September 1, 2009, and March 30, 2011 (which I estimate to be the earliest likely date for the entry of judgment) results in a total of $109,860.64 in interest. Accordingly, I respectfully recommend an award of pre-judgment interest in that amount.

3. Advance for Property Taxes and Insurance Premiums

BH99 also seeks $3,499.15 in amounts advanced by Greystone to pay for property taxes and insurance premiums after the default. BH99 points to no provision of the Note under which it is entitled to recover these payments. However, the record demonstrates that BH99 is contractually entitled to recover "expenses and costs… incurred by Lender as a result of any default under this Note." Note § 11. BH99 establishes that these costs were incurred and paid. *See* Pierre Supp. Dec. Exs. B, C, & D; Kramer Supp. Dec. ¶ 7. It also establishes that such payments were necessary to "comply with the law, avoid a tax lien and protect Greystone's security." Kramer Supp. Dec. ¶ 7. I therefore respectfully recommend that the court award BH99 $3,499.15 to cover the payments for property taxes and insurance premiums.

### 4. Late Fees

BH99 seeks $786.92 in late charges. Under the terms of the Note, BH99 is entitled to late charges in the amount of "five percent (5%) of the installment not paid or the amount due" whenever monthly payments are made late, in order to compensate it for "additional expenses Lender will incur by reason of such late payment." Note § 7. BH99 seeks late charges for the months following default but prior to the acceleration of the loan; namely September 2009 through December 2009. Kramer Supp. Dec. ¶ 9. BH99 has adequately pleaded that the monthly payments due those months were not paid and therefore that it is owed $196.73 per month (five percent of the $3,934.52 monthly payment), for a total amount of $786.92. Pierre Supp. Dec. Ex. B. I therefore respectfully recommend that the court award that amount.

### 5. Broker Price Opinion Report

BH99 seeks $500.00 that Greystone paid for an appraisal of the property following defendants' default. Kramer Supp. Dec. ¶ 8. BH99 has established that this payment was necessary and is recoverable. *See id.*; Note § 11. I therefore respectfully recommend that the court award that amount.

### 6. Attorneys' Fees

BH99 seeks reimbursement of a total of $14,775.60 in attorneys' fees for 37.1 hours of work (including $8,144.10 for 22.2 hours of work up until the submission of the instant motion, and an additional $6,631.50 for 14.9 hours of work between then and the submission of its counsel's supplemental declaration four months later). *See* Kramer Dec. ¶¶ 14-15, Ex. B; Kramer

Supp. Dec. ¶¶ 19-20, Ex. 3.[5] As a contractual matter, it is entitled to recover its attorneys' fees under the terms of the loan documents. *See* Note § 11 (providing that "Borrower shall pay all expenses and costs including fees and out-of-pocket expenses of attorneys … incurred by Lender as a result of any default under this Note or in connection with efforts to collect any amount due under this Note, or to enforce the provisions of any of the other Loan Documents, including those incurred in post-judgment collection efforts and in any bankruptcy proceeding … or judicial or non-judicial foreclosure proceeding.").

Courts in this circuit assess such fee applications using the "lodestar method," under which a reasonable hourly rate is multiplied by a reasonable number of hours expended. *See Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997); *King v. JCS Enters., Inc.*, 325 F. Supp. 2d 162, 166 (E.D.N.Y. 2004) (citing *Green v. Torres*, 361 F.3d 96, 98 (2d Cir. 2004); *Quaratino v. Tiffany Co.*, 166 F.3d 422, 425 (2d Cir. 1999)).[6] District courts have broad discretion, using "'their experience with the case, as well as their experience with the practice of law, to assess the reasonableness'" of each component of a fee award. *Fox Indus., Inc. v. Gurovich*, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)). I therefore examine the reasonableness of both the hourly rates at which BH99's attorneys seek to be compensated and the number of hours for which they seek reimbursement.

---

[5] For the first period, BH99 provides invoices for fees totally $9,717.30. Kramer Dec. Ex. B. In all of its other pertinent submissions, however – including its first statement of damages, DE 26-4, and Kramer's supplemental declaration, Kramer Supp. Dec. ¶ 18 – BH99 requested a total of only $8,144.10 in fees. The latter amount appears to exclude hours billed in June 2010, and I therefore assume that BH99 has abandoned that potion of its request.

[6] I use "lodestar" only for ease of reference. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 & n.4 (2d Cir. 2008).

a. <u>Hourly Rates</u>

BH99 asks for an award of fees based on hourly rates of $702 to $735 for partner Felder, who was admitted to practice in 1978; $396 to $435 for associate Kramer, who was admitted to practice in 2006; $319.50 for associate Thomas C. Hardy ("Hardy"), who was admitted to practice in Illinois in 2007; and $180 to $202.50 for the work of four paralegals. Kramer Supp. Dec. ¶ 11.

A reasonable hourly rate is the rate a "reasonable, paying client" would be willing to pay. *Arbor Hill*, 522 F.3d at 184; *see also McDaniel v. City of Schenectady*, 595 F.3d 411, 420 (2d Cir. 2010) (a presumptively reasonable fee represents an approximation of "what a competitive market would bear"); *Manzo v. Sovereign Motor Cars, Ltd.*, 2010 WL 1930237, at *7 (E.D.N.Y. May 11, 2010) (a presumptively reasonable fee "boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively") (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quotation marks omitted)).

A court seeking to determine the rate a reasonable client would be willing to pay should consider, among others, the twelve so-called *Johnson* factors. *See Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) (listing twelve factors to be considered by courts in determining the rate a reasonable client would be willing to pay).[7] Having considered all of the circumstances against that standard, I am persuaded that a reasonable, paying client would not be willing to pay hourly rates quite as high as BH99 seeks for its counsel.

---

[7] Those factors include (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal services properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the "undesireability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id*.

BH99 has provided very little information about its counsel to justify the rates it seeks. It provides the number of years each attorney has been in practice and its counsel asserts that "Felder has significant experience in commercial mortgage foreclosures, having litigated such cases for the past 20 years." Kramer Supp. Dec. ¶ 21. It provides no comparable information about attorney Kramer, who billed the bulk of the hours for which BH99 is seeking reimbursement. Its counsel also asserts, without elaboration or evidentiary support, that the claimed rates "are reasonable and well within the hourly rates charged by other firms of comparable size in New York City." Kramer Dec. ¶ 17.

Contrary to the assumption implicit in the latter assertion, the relevant geographical area for comparative rates is not New York City as a whole, which includes parts of two separate federal judicial districts, but rather the Eastern District of New York as such. *See Luciano*, 109 F.3d at 115; *Coated Fabrics Co. v. Mirle Corp.*, 2008 WL 163598, at *7 (E.D.N.Y. Jan. 16, 2008). As set forth above, the court's inquiry must focus on the amount that a reasonable paying client would be willing to pay in a competitive market under all of the relevant circumstances. BH99 has provided virtually no information that serves to support its requested hourly rates under that standard.

In the absence of any such information, I look to prior similar cases in this district for guidance as to an appropriate hourly rate. "[F]or actions in this District involving mortgages and promissory notes attorneys' fees have been approved in the range of $150 to $175 (for senior associates) and $200 to $250 for partners." *Kochisarli v. Tenoso*, 2008 WL 1882662, at *7 (E.D.N.Y. Apr. 24, 2008) (citation omitted) (reducing claimed hourly rates of $450 and $350 to $250 and $200, respectively); *see also 1st Bridge LLC v. 682 Jamaica Avenue LLC*, 2010 WL

13

4608236, at *6 (E.D.N.Y. July 13, 2010) (approving request for fees at an hourly rate of $250, and noting it was "at the higher end of the spectrum" of reasonable rates). Based on this precedent, as well as other cases considering fees in other contexts, *see e.g. Melnick v. Press*, 2009 WL 2824586, at *9 (E.D.N.Y. Aug. 28, 2009) (reviewing cases), I respectfully recommend that the court award fees based on the following hourly rates: $250 for Felder, $175 for Kramer, $150 for Hardy, and $80 for the work of the four paralegals.

b. <u>Hours Expended</u>

I next turn to the question of whether the hours expended by counsel were reasonable in an action of this nature. Based on my review of the monthly billing invoices submitted by BH99, it appears that BH99 seeks reimbursement for a total of 37.1 hours of work, including 26.6 hours worked by Kramer, 3.1 hours by Hardy, 2.0 hours by Felder, and 5.4 hours by the paralegals. Kramer Dec. Ex. B; Kramer Supp. Dec. Ex. 3.

A fee applicant bears the burden of demonstrating the hours expended and the nature of the work performed through contemporaneous time records that describe with specificity the nature of the work done, the hours expended, and the dates. *New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1147-48 (2d Cir. 1983). The absence of contemporaneous records precludes any fee award in all but the most extraordinary of circumstances. *Scott v. City of New York*, 626 F.3d 130, 133-34 (2d Cir. 2010). Inadequate documentation is grounds for reduction of a fee award. *Hensley v. Eckhart*, 461 U.S. 424, 433 (1983); *Levy v. Powell*, 2005 WL 1719972, at *6 (E.D.N.Y. July 22, 2005). BH99 has submitted Kramer's declarations along with apparently contemporaneous billing records. *See* Kramer Dec. Ex. B; Kramer Supp. Dec. Ex. 3. Having

14

reviewed these submissions, I am satisfied that it sufficiently documents the number of hours its attorneys have billed but that some of the hours expended are not justified.

Given the duration and complexity of the litigation, most of the hours billed are within a reasonable range. However, attorney Kramer billed at least seven hours in December 2010 for the preparation of additional submissions to the court. Kramer Supp. Dec. Ex. 3. The latter submissions were provided to address deficiencies in the record that undermined certain aspects of the request for relief on the motion for a default judgment. While some portion of the time spent supplementing the record in response to my inquiries was undoubtedly reasonable, the fact that BH99's counsel had to supplement the record in this manner, rather than making a sufficient request in the first instance, undoubtedly produced some inefficiency for which Li should not be held responsible. Accordingly, I recommend that BH99 should not be reimbursed for half of the seven hours that its counsel spent supplementing the record. I therefore respectfully recommend that the court award BH99 fees based on 33.6 hours worked.

c. Total Reimbursement

Incorporating my recommended reductions of the hourly rates and hours worked into BH99's fee application produces the follow results:

| Name | Hourly Rate | | Hours Worked | | Adjusted Fee |
| --- | --- | --- | --- | --- | --- |
| | Claimed | Adjusted | Claimed | Adjusted | |
| Felder | $702-$735 | $250 | 2.0 | 2.0 | $500.00 |
| Kramer | $396-$435 | $175 | 26.6 | 23.1 | $4,042.50 |
| Hardy | $319.50 | $150 | 3.1 | 3.1 | $465.00 |
| Paralegals | $180-$202.50 | $80 | 5.4 | 5.4 | $432.00 |
| TOTAL | | | 37.1 | 33.6 | $ 5,439.50 |

Accordingly, I respectfully recommend that the court award BH99 $5,439.50 in attorneys' fees.

7. Attorneys' Costs And Disbursements

Finally, BH99 seeks reimbursement of $1,687.10 in costs that its counsel reportedly incurred on its behalf. *See* Kramer Dec. ¶ 16; Kramer Supp. Dec. ¶ 19. Specifically, it seeks to have reimbursed the following: the $350 filing fee, $350 for a title report on the Property, $887.75 for service of process, $35 for a Notice of Pendency filing fee, $51.30 for delivery charges, and $13.05 for photocopies. Statement of Damages. Section 11 of the Note plainly provides for the reimbursement of such costs, and the docket conclusively establishes that BH99 paid $350.00 to file its complaint. Further, submissions by BH99 document that its counsel paid the claimed amounts for all other costs and explain the purpose of these costs to this litigation. Kramer Dec. Exs. A & B; Kramer Supp. Dec. ¶¶ 13-16 & Exs. 1-3. Accordingly, I respectfully recommend that the court award BH99 its litigation costs in the amount of $1,687.10.

III. Recommendation

For the reasons set forth above, I respectfully recommend that the court award judgment in favor of the plaintiff on its first and fifth causes of action, dismiss the remaining three claims, order the foreclosure and sale of the subject property, and enter judgment against defendant Li alone in the amount of $696,878.95 (including unpaid principal of $575,155.64; $109,860.64 in unpaid interest on the principal; $3,449.15 in amounts advanced by Greystone for property taxes and insurance premiums; $786.92 in late fees; $500.00 for a broker price opinion report; $5,439.50 in attorneys' fees; and $1,687.10 in litigation costs).

IV. Objections

This Report and Recommendation will today be filed on the electronic docket and is therefore deemed served on each party, including the defendants who have now appeared and are

represented by counsel. Any objections to this Report and Recommendation must be filed no later than March 30, 2011. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

**SO ORDERED.**

Dated: Brooklyn, New York
March 16, 2011

<u>/s/ James Orenstein</u>
JAMES ORENSTEIN
U.S. Magistrate Judge